EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARLOS OSORIO, acusado y apelante.

No. 3434.—*Visto:* Marzo 16, 1928. *Resuelto:* Marzo 21, 1928.

1. HOMICIDIO—"INDICTMENT" Y ACUSACIÓN—INTENCIÓN PARA COMETER HOMICIDIO.—Una acusación que dice que el acusado ilegal y voluntariamente acometió y agredió con un revólver a un ser humano, y le infirió varias heridas que le produjeron la muerte, realizando todo ello con ocasión de una súbita pendencia o arrebato de cólera, suficientemente alega la intención del acusado para cometer el delito de homicidio.

2. DERECHO PENAL—APELACIÓN Y ERROR Y CERTIORARI — REVISIÓN — PERSONAS IMPEDIDAS DE ALEGAR ERROR—ADMISIÓN DE PRUEBAS.—Objetada por el acusado en un caso de homicidio la anunciada presentación de prueba por parte del fiscal tendente a demostrar la existencia de un asesinato, y no impugnada cuando en efecto fué presentada, no puede sostenerse luego en apelación que se cometiera error perjudicial por la corte al permitirla.

3. DERECHO PENAL—JUICIO—INSTRUCCIONES—INSTRUCCIÓN SOBRE DEFENSA PROPIA—SU SUFICIENCIA.—Examinada la instrucción sobre defensa propia trasmitida por la corte al jurado a•la luz de lo dispuesto en los artículos 209 y 210 del Código Penal, *se resolvió* que era suficiente.

4. DERECHO PENAL—APELACIÓN Y ERROR Y CERTIORARI—REVISIÓN—ERRORES SIN IMPORTANCIA—INSTRUCCIONES—INSTRUCCIONES RELATIVAS A LAS PRUEBAS —RESUMEN DE LAS PRUEBAS.—Cuando la corte no hace un resumen completo de la prueba, en ausencia de excepción o insinuación alguna para que lo hiciera o de una demostración de que la prueba era larga y confusa o de que el juicio hubiera durado varias sesiones y por sus circunstancias demandara el resumen, el error cometido no es perjudicial.

SENTENCIA de *Domingo Sepúlveda,* J. (San Juan), condenando al acusado por delito de Homicidio Voluntario. *Confirmada.*

*José S. Alegría, José de J. Tizol* y *R. Rivera Zayas,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Carlos Osorio fué acusado a virtud de información del Gran Jurado como autor de un delito de homicidio voluntario, así:

"El referido Carlos Osorio, el día 10 de abril A. D., 1924, y en la parte sur de San Juan, P. R., ilegal y voluntariamente y en ocasión de una súbita pendencia o arrebato de cólera, acometió y agredió con un revólver, que es un arma mortífera, a Miguel Angel Rivera, quien era un ser humano, haciéndole varios disparos, e infiriéndole varias heridas que le produjeron la muerte a las pocas horas."

Hizo la alegación de no culpable. Fué la causa a juicio. Actuó un Pequeño Jurado. Se practicó la prueba, las partes informaron, la corte dió las necesarias instrucciones y el jurado rindió un veredicto de culpable. La corte dictó luego sentencia condenando al acusado a cuatro años de presidio con trabajos forzados. No conforme el acusado, apeló, señalando en su alegato la comisión de cinco errores.

[1] Sostiene en el primero que la acusación es fatalmente defectuosa porque no alega la intención del acusado para cometer el delito de homicidio.

El artículo 203 del Código Penal dice:

"Art. 203. Homicidio es dar muerte ilegal a un ser humano sin que medie malicia. Es de dos clases:

"1. Voluntario: cuando ocurre con ocasión de una súbita pendencia o arrebato de cólera.

"2. Involuntario: cuando ocurre al realizarse un acto ilegal, que no constituyere delito grave (*felony*); o al realizarse un acto legal que pudiere ocasionar muerte en forma ilegal, o sin la debida prudencia o circunspección."

Y parte de la jurisprudencia resumida por Ruling Case Law, es como sigue:

"Si el dar muerte a un ser humano no constituye el delito de asesinato en primer grado ni en segundo grado, y sin embargo no es excusable en derecho por haberse cometido en defensa propia del

victimario, se desprende generalmente que el delito debe ser homicidio. Homicidio es dar muerte a un ser humano sin que medie malicia; es un delito distinto, no es un grado del delito de asesinato. La distinción existente entre asesinato en primer grado y asesinato en segundo grado descansa en el grado de malicia con que el acto homicida fué cometido—ya sea expresa o implícita, premeditada o no premeditada; y la distinción existente entre asesinato en segundo grado y homicidio es el elemento de malicia que forma parte constitutiva del primero pero que falta en absoluto en el segundo. . . . . El Juez Presidente Sr. Shaw, en un caso que es autoridad en la materia, dijo lo siguiente: 'Homicidio es dar muerte ilegal a un semejante, sin que medie malicia, y puede ser voluntario, como cuando el acto es cometido con el designio real y con el fin de matar, pero con ocasión de un arrebato de cólera, causado por una gran provocación, que por lo sensible de la naturaleza humana la ley considera suficiente para mitigar el delito; o involuntario cuando la muerte de un semejante es causada por algún acto ilegal, no acompañado de la intención de arrebatar la vida a tal semejante.'' 13 R.C.L. 783.

Si se compara la ley y la jurisprudencia aplicables con los hechos consignados en la acusación y se tiene en cuenta lo dispuesto en el artículo 12 del Código Penal, a saber: ''La intención se manifiesta por las circunstancias relacionadas con el delito,'' se concluirá sin esfuerzo alguno que la acusación es suficiente.

En la acusación se dice que Osorio ilegal y voluntariamente acometió y agredió con un revólver a Rivera y le infirió varias heridas que le produjeron la muerte, realizando todo ello con ocasión de una súbita pendencia o arrebato de cólera.

Al exponer en su artículo 559 el Código Penal el significado de las palabras usadas en el mismo, refiriéndose a *voluntariamente* dice que ''aplicada a la intención con que se ejecute un acto, o se incurre en una omisión, implica simplemente el propósito o voluntad de cometer el acto, o de incurrir en la omisión a que se refiere.'' Y así del acto realizado voluntariamente por el acusado en este caso surge la intención a que se refiere el Juez Presidente Sr. Shaw,

que no llega a ser maliciosa, según la acusación, porque se manifestó a virtud de la violencia y de la perturbación mental producidas por la súbita pendencia, o el arrebato de cólera.

[2] El segundo error se refiere al cometido a juicio del apelante por la corte al permitir que se presentara prueba correspondiente a un asesinato cuando la acusación era por homicidio.

Según los autos, ocurrió lo que sigue:

''Abogado: Voy a plantear una cuestión de derecho antes de seguir adelante y voy a pedir que se retire el jurado. Juez: Que se retire el jurado bajo la custodia del márshal y se hace al jurado la advertencia de ley; la que hizo la corte al conceder el receso, se repite ahora con todas sus palabras, se reproduce ahora como si se hiciera de nuevo. Abogado: La cuestión que respetuosamente deseo plantear es la siguiente: Dentro de nuestro procedimiento, el acto del Fiscal presentar su caso al jurado significa la condensación o la expresión más o menos condensada, puede ser extensa, de los hechos o de la prueba en la cual va a basar su acusación. Sostenemos que el Fiscal no puede sostener en un juicio de esta índole, en cualquier juicio, una acusación con evidencia que no esté de acuerdo con la acusación formulada. Si lo que el Fiscal ha expresado es lo que va a probar entonces la defensa está en un caso de indefensión absoluta, porque no estamos preparados para defendernos del delito que el Fiscal trata de probar sino de la siguiente acusación: (En este momento el abogado dió lectura a la acusación). Es decir, no estamos preparados para defendernos de una prueba a virtud de la cual el acusado compró un revólver en tal sitio, que acechó en tal o cual otro sitio a otro y sin que medien palabras, sin que haya discusión ni arrebato de cólera ni súbita pendencia disparó su revólver contra otro. Si se nos formula ahora una acusación como ésa entonces nosotros necesitamos tiempo para prepararnos.-- Fiscal. Señor Juez: Este es un caso en que el Fiscal entendió siempre que se trataba no de un Homicidio Voluntario sino de asesinato. El Fiscal jamás pensó que un Gran Jurado, haciendo mal uso de sus facultades, rebajara el delito de Asesinato a Homicidio Voluntario y presentó una acusación en esa forma. Si eso hizo el Gran Jurado tanto mejor para el acusado en el presente caso. La jurisprudencia es unánime, es clara que un delito de Asesinato incluye el de

Homicidio Voluntario. Si el Fiscal probara esos hechos, el Fiscal probaría algo más de lo que está obligado a probar, pero sin embargo es prueba pertinente. Si lo que la defensa entiende es que no se puede presentar prueba de premeditación, prueba, por ejemplo de la cuestión del revólver, que lo compró en Manatí, y circunscribir expresamente el caso a un Homicidio Voluntario, yo estaría conforme en que no se presentara prueba de premeditación siempre y cuando que se acepte, señor Juez, que el caso de aquí en adelante lo vamos a circunscribir a Homicidio Voluntario y no podamos presentar en manera alguna ninguna prueba sobre premeditación, ya en forma afirmativa por parte del Fiscal o ya en forma de defensa por parte de la defensa. Si en esa forma quiere el compañero plantear el debate, yo estoy conforme.—Juez: La corte en este momento hace constar que en este caso, con cualquier prueba que se presente ante el Jurado, la corte instruirá al Jurado que no puede dar un veredicto más alto de Homicidio Voluntario, aun cuando se demuestre que ha habido Asesinato en primer grado. Lo otro es una cuestión de evidencia y a medida que vaya surgiendo la prueba irán surgiendo las cuestiones, y ya las resolverá la corte, de acuerdo con la ley.''

Para sostener su contención cita el apelante el párrafo 167 del tomo 8 de la obra ''California Jurisprudence,'' que dice:

''Ha sido reconocida universalmente la regla de que un acusado en una causa criminal no puede ser juzgado por ningún otro delito del imputádole en la acusación o denuncia. No es admisible que El Pueblo pruebe que el acusado ha cometido otros delitos distintos, cuya prueba no tiende a probar algún hecho pertinente relacionado con el delito imputádole. Tal prueba es inadmisible, ya sea para probar la disposición por parte del acusado a cometer tales delitos como el imputádole, o para corroborar las declaraciones tendentes a probar el delito específico de que se le acusa. La mera proximidad de tiempo y lugar no hace que esta evidencia sea admisible. Por el mismo principio, no es permisible que el fiscal presente prueba impertinente no constitutiva de delito y cuyo fin meramente es degradar y perjudicar al acusado ante los ojos del jurado, o presentar prueba de la tendencia del acusado a cometer el delito de que se le acusa. No es permisible al fiscal probar que el acusado ha sido conocido con nombres supuestos, que se le ha acusado de la comisión de otros delitos, o que ha sido arrestado y encarcelado, a no ser que tal prueba sea pertinente al delito imputado. Tampoco puede

el fiscal probar que el acusado se preparaba para cometer otros delitos después de haber cometido el delito imputádole, o que tenía en su poder venenos que no tienen relación alguna con el delito de que se le acusa, o que era culpable de conducta inmoral. No importa cuán depravado o vicioso pueda ser un acusado, tiene derecho a que se le juzgue solamente por el delito de que se le acusa." 8 Cal. Jur. 58, 59.

La jurisprudencia citada no es aplicable, a nuestro juicio, a este caso. Se refiere a actos delictivos distintos. Aquí se trata de un solo acto, la muerte ilegal de una persona ocasionada por otra, que puede ser calificada según las circunstancias concurrentes, bien de asesinato, ya de homicidio.

Si se estudia cuidadosamente la resolución de la corte, se verá que aunque algo dudosa termina dejando para luego la decisión definitiva de la cuestión suscitada. En su alegato el apelante llama la atención únicamente hacia la página 67 de la transcripción, y en efecto en dicha página comienza la declaración del testigo José Rivero que dice que Osorio le compró un revólver. Sin embargo, no consta objeción alguna. Al contrario, aparece que una vez que declaró el testigo el fiscal presentó como prueba el revólver y fué admitida sin objeción según se consigna expresamente.

Bajo esas circunstancias, no creemos que se cometiera error perjudicial alguno.

Creemos que la verdadera regla es que en un caso de homicidio sólo debe presentarse prueba tendente a demostrar la existencia del homicidio y no de un asesinato, pero pudiera suceder que la realidad de las cosas fuera que constituyendo el hecho un asesinato se hubiera formulado acusación por homicidio. Entonces, al hablar los testigos, a menos que se les impidiera producirse con verdad, tendrían que describir un asesinato. Sus declaraciones serían admisibles. Lo único que sucedería es que el veredicto o el fallo sólo podría ser de homicidio y no de asesinato.

[3] Los errores tercero y cuarto se refieren a las ins-

trucciones. Sostiene el apelante que no se instruyó debidamente al jurado sobre la defensa propia y que no se cumplió con la ley haciendo un resumen de la prueba.

Las instrucciones sobre defensa propia fueron así:

"En este caso, la teoría de la defensa, ha sido la legítima defensa, la defensa propia; es decir que el acusado, por medio de su abogado ante el Jurado alega que si el acusado mató con un revólver a Miguel Angel Rivera, fué en legítima defensa o sea en el ejercicio del derecho de la defensa propia. La ley sobre defensa propia, la corte la va a dar a los señores del Jurado; dice así:

"La persona contra quien se intente algún daño, podrá oponer la necesaria resistencia para impedir una ofensa contra su persona o su familia o algún miembro de ésta. El derecho a la propia defensa en ningún caso se extiende a la inflicción de más daño que el necesario al objeto. Para justificar un homicidio en que se alegue la propia defensa, es necesario no sólo creer, sino tener motivos fundados para creer que al matar al agresor se hallaba el acusado en inminente o inmediato peligro de muerte o de grave daño personal. Las circunstancias deberán ser de tal naturaleza que lleven al ánimo de una persona de moderada prudencia el convencimiento de que el acusado se hallaba en peligro de muerte o de grave daño personal. Fundado temor no significa el temor de un cobarde sino el temor de una persona de moderado valor; no el hombre que le tiene miedo a su propia sombra, sino el hombre que razonadamente ve una justa demostración o agresión y tiene motivos fundados para creer que puede peligrar su vida o que está en peligro de grave daño corporal."

Examinadas esas instrucciones a la luz de lo dispuesto en los artículos 209 y 210 del Código Penal, nos parece suficientes.

[4] Es cierto que la corte no cumplió en todo sino en parte con lo dispuesto en el artículo 233, inciso 8⁰ del Código de Enjuiciamiento Criminal enmendado en 1911, al no hacer un resumen completo de la prueba practicada, limitándose a decir que la prueba estaba fresca en la memoria de los jurados y tenía tal o cual tendencia, pero, a nuestro juicio, en ausencia de excepción o insinuación alguna a la corte para que hiciera el resumen, o de una demostración

de que se trataba de una prueba larga y confusa o de un juicio que hubiera durado varias sesiones y por sus circunstancias demandara el resumen, el error cometido no es perjudicial.

El último de los errores señalados se refiere a la negativa de una moción de nuevo juicio. Dicha moción se basó en la alegación de los dos primeros errores que hemos visto que no existen.

*Debe confirmarse la sentencia recurrida.*